**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| RPM Performance Coatings Group, Inc. and Stonhard, a division of StonCorp Group, Inc., </br> Plaintiffs, </br> vs. </br> William G. Fredrick, </br> Defendant. | Case No. 12-1392-CV-W-FJG |

**ORDER**

Before the Court are the parties' briefs regarding damages (Doc. Nos. 28, 30, 31, 32, and 34). Plaintiffs' claims for monetary relief are addressed below.

**I.   Background**

Plaintiffs filed a complaint on November 26, 2012, asserting that defendant violated the terms of his non-compete agreement with plaintiffs by accepting employment at a competitor and bidding for competing jobs. Plaintiffs filed motions for temporary restraining order and for preliminary injunction. On December 13, 2012, the Court denied the motion for temporary restraining order following a teleconference in which defendant did not participate, and ordered a preliminary injunction hearing be held Friday, January 11, 2012.

In the meantime, on December 27, 2012, plaintiffs filed a motion for entry of default, noting that defendant had not timely answered the complaint. On December 28, 2012, the Court issued an order for defendant to show cause on or before January 9, 2013, why an entry of default should not be made. Defendant did not respond to the

order to show cause, and so on January 10, 2013, the Court entered an order granting the motion for entry of default and cancelling the preliminary injunction hearing. The Court further ordered plaintiffs to file a motion for default judgment, specifying the relief requested, on or before February 1, 2013.

On March 18, 2013, after briefing had been filed, the Court granted a default judgment and entered a permanent injunction. The Court also directed plaintiffs to file a brief specifying the monetary damages they believed they were entitled to.

On April 5, 2013, plaintiffs filed their opening brief regarding damages (Doc. No. 28). Plaintiffs request a total of $126,927.98 in damages against defendant. This represents $96,801.58 in alleged lost profits and loss of goodwill, and $30,126.40 in costs and attorneys' fees. Following the Court's review of the first round of briefs, the Court directed the parties to answer specific questions regarding calculation of lost profits and other damages. Plaintiffs' response to the Court's order has now been filed (Doc. No. 34), and the issue is ripe for the Court's consideration.

**II.     Damages**

Plaintiffs seek two forms of monetary relief as damages: (1) compensatory damages for alleged lost profits and loss of goodwill, and (2) attorneys' fees.

    A.     Compensatory Damages

Under New Jersey law (which applies to the subject employment agreement), the following rules apply as to compensatory damages in a case involving a non-compete agreement**:**

> Under contract law, a party who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract. . . . . We recognize that the goal is

2

> "to put the injured party in as good a position as ... if performance had been rendered." We have also held: "[w]hat that position is depends upon what the parties reasonably expected. It follows that the defendant is not chargeable for loss that he did not have reason to foresee as a probable result of the breach when the contract was made."
>
> However, although the non-breaching party must demonstrate that, in order to be compensable, "the loss must be a reasonably certain consequence of the breach[,] ... the exact amount of the loss need not be certain." That reasoning is in accord with our ordinary considerations about contract damages that are uncertain in amount. . . . . As the trial court and the majority of the appellate panel recognized, mere uncertainty as to the quantum of damages is an insufficient basis on which to deny the non-breaching party relief. Although it complicates the precise calculation of damages, our courts have long held that "[p]roof of damages need not be done with exactitude.... It is therefore sufficient that the plaintiff prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate."

Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 13-14, 921 A.2d 1100, 1108 (2007) (internal citations omitted).  With that standard in mind, the Court turns to plaintiffs' claims for damages.

    1.  General Loss of Good Will

Plaintiffs first claim damages for loss of good will, asking the Court to award a percentage of lost profits during the four months between when the case was filed (November 2012) and when the injunction was entered (March 2013).  Specifically, plaintiffs assert that they earned an average of $15,209.65 in profit per month in defendant's territory in Fiscal Year 2012, but that the average profit since defendant left is now $9,750.00 per month.  Plaintiffs request 30% of the lost profits during Fredrick's

period of competition be awarded to them as compensation for loss of good will. The amount requested is $6,551.58.[1]

Upon review of New Jersey case law, the Court cannot find support for calculation of loss of goodwill in the manner suggested by plaintiffs. The Court will not adopt plaintiffs' calculations and award loss of goodwill damages; therefore, plaintiffs' request is denied in part. However, the Court believes that plaintiffs' calculation of lost profits over the course of the four months of competition should be the basis for calculation of compensatory damages. The Court finds that the reasonable amount of lost profit damages over the course of the four months of competition is **$21,838.60**, representing $5,459.65 average lost profits per month times four months. Therefore, plaintiffs will be awarded compensatory damages in the amount of **$21,838.60**.

        2.     Water One Project, Lost Profits

Plaintiffs assert that defendant quoted the Water One Project on behalf of plaintiffs on September 6, 2012. On October 30, 2012, defendant quoted the same project on behalf of DesKo, and compared Desko's product to plaintiffs'. Plaintiffs assert that DesKo was awarded the project over plaintiffs (see Affidavit, Doc. No. 31, Ex. A, ¶ 7). Plaintiffs estimate lost profits on the Water One project in the amount of **$22,750.00.** Plaintiffs request the full amount in lost profits as damages.

Defendant responds that he "removed [himself] from involvement" on this project "following notification of the non compete claim." See Doc. No. 30. Defendant further argues that plaintiff has not demonstrated that defendant caused damages, as plaintiff

---

[1] $15,209.65 in 2012 profits - $9,750.00 in profit after defendant left = $5,459.65 lost profits per month. $5,459.65 monthly lost profits X 4 months = $21,838.60. $21,838.60 X 30% = $6,551.58.

has not provided its quote for the same project; defendant asserts that plaintiffs' quote was the highest provided to the general contractor, and that is why they did not get the project. In their response to the Court's Order (Doc. No. 34 p. 3), plaintiffs indicate that "the decision not to accept a project gained through improper competition does not diminish the damage to Stonhard. Stonhard therefore requests that it be awarded $22,750.00 for Fredrick's competition on this project."

Upon the Court's review, the Court finds that plaintiffs have not shown that they would have otherwise been awarded the project if defendant did not submit a bid on it. In other words, the Court does not believe the lost profits on Water One are a "reasonably certain consequence of the breach." Totaro, 921 A.2d at 1108. Therefore, plaintiffs' request for lost profits damages related to the Water One Project is **DENIED.**

        3.     Mercy Hospital Project, Loss of Goodwill

Plaintiffs assert that defendant used information and pricing from plaintiffs to bid on a project for Mercy Hospital within his former territory. Plaintiffs state that they bid on the Mercy Hospital project, but they were not awarded it. Plaintiffs assume that defendant said something to the general contractor on the Mercy Hospital project that caused plaintiffs to lose good will. Plaintiffs state that they would have made an estimated $225,000.00 in net profit on the Mercy Hospital project had it been awarded to them; they request 30% of these profits ($67,500) to be awarded as a loss of good will attributable to defendant's competition.

Defendant responds (Doc. No. 30) that he did not have any contact or involvement with the contractor who did win this project, and he does not have any knowledge of which competitor was awarded that project. In plaintiffs' response to the

Court's order (Doc. No. 34), plaintiff states it "does not know what was said by Fredrick that may have undermined the goodwill it spent years trying to cultivate, but it does know that it was not awarded the project." Plaintiff further states that the testimony of its general manager is sufficient to support an award for loss of goodwill (citing to a case from Arizona).

Noticeably absent from plaintiffs' briefs is any indication that defendant did anything that caused a loss of good will, or that his new employer was awarded the bid on this project. The Court cannot find, under the facts asserted, that these damages are a "reasonably certain consequence of the breach." Totaro, 921 A.2d at 1108. Therefore, plaintiffs' request for damages for loss of goodwill related to the Mercy Hospital Project will be **DENIED.**

B. Attorneys' fees and costs

In this matter, attorneys' fees are recoverable pursuant to the contract between plaintiffs and defendant. Plaintiffs seek a total of $30,126.40 in attorneys' fees and costs. Although defendant argues that no attorneys' fees should be awarded, the Court believes that some amount of attorneys' fees is necessary, given that defendant appears to have competed with plaintiffs for a brief period of time once he left plaintiffs' employment.

The Supreme Court has recognized the most useful "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). This result is known as the lodestar figure and is presumed to reflect the reasonable fee. See City of Burlington v.

Dague, 505 U.S. 562, 120 L. Ed. 2d 449, 112 S. Ct. 2638 (1992).

In the current matter, the Court finds the hourly rates billed by all attorneys to be reasonable. However, the Court believes the number of hours expended on this matter to be excessive, given that (1) defendant represented himself in this matter; (2) defendant did nothing to prevent default from being entered; and (3) the only significant hearings in this case were a brief teleconference with the Court on the motion for temporary restraining order and a preliminary injunction hearing which was ultimately cancelled.

The Court has considered plaintiffs' billing records, and makes the following downward adjustments to the hours billed by plaintiffs' attorneys:

      1.     National Counsel

Counsel indicate that partners at Bradford Neal Martin and Associates (a South Carolina firm) spent 46 hours at $350 per hour, senior associates spent 40.40 hours at $175 per hour, and junior associates spent 17.5 hours at $175 per hour, for a total of $26,232.50 plus costs of $116.95 for a total of $26,349.45.

Approximately 40 of these hours were spent before the filing of this case, working on the motion for temporary restraining order and the complaint. The complaint is 10 pages long, and mostly cites to the contract provisions allegedly violated. The suggestions in support of the motion for temporary restraining order and/or preliminary injunction are 13 pages long, and consist primarily of information that should be considered boiler-plate. The Court finds that a reasonable amount of time spent prior to the filing of this action would be 15 hours; 7.5 hours of partner time would be $2,625.00, and 7.5 hours of associate time would be $1,312.50.

The Court finds that 3.5 hours reasonably were spent by the partner prior to the temporary restraining order teleconference, for a total of $1,225.00.

With respect to preparation for the preliminary injunction hearing, much of the billing that seems excessive (i.e., .2 for "Review of docket to see if defendant has appeared" and .3 for "review of deadlines for Fredrick to respond" – both of the activities would take less than a minute). The Court also will not allow counsel to bill for their time spent travelling to the airport for the preliminary injunction hearing. The Court ultimately reduces the amount of time for preparation for the preliminary injunction hearing to 15 hours total, given duplication of efforts and other inefficiencies. 7.5 hours of partner time would be $2,625.00, and 7.5 hours of associate time would be $1,312.50.

Following entry of default, plaintiffs were directed to file a motion for default judgment. Their motion sought permanent injunctive relief and requested a hearing on damages. Such a motion should not take long to draft. Nonetheless, counsel billed approximately 20 hours for this, with a great deal of research on side issues, such as whether punitive damages were appropriate (1.3 hours). The Court believes 7 hours to be reasonable for preparing the motion for default judgment. 3.5 hours of partner time would be $1,225.00; 3.5 hours of associate time would be $612.50.

Finally, counsel billed 16.9 hours for preparation of the present brief on damages. Again, the Court finds this amount of time to be excessive. The Court finds 7 hours to be a reasonable amount of time to spend on this project. 3.5 hours of partner time would be $1,225.00; 3.5 hours of senior associate time would be $612.50.

Therefore, the reasonable total for national counsel's attorneys' fees is **$12,775.00.** The Court further finds national counsel's request for costs in the amount

of **$116.95** to be reasonable. Therefore, the total amount awarded for national counsel is **$12,891.95.**

2. Local Counsel

Local counsel in Kansas City billed **$3,776.95** for fees and costs (including costs of filing suit and costs for service of summons). The Court has reviewed their billing records, and does not find them excessive. Therefore, the Court will award attorneys' fees for local counsel in the amount of **$3,776.95**.

The total reasonable amount of attorneys' fees and costs in this matter, therefore, is **$16,668.90**.

**III. Conclusion**

Therefore, for all the foregoing reasons, it is hereby **ORDERED, ADJUDGED, AND DECREED** that plaintiffs are awarded final judgment against defendant in the amount of **$21,838.60**, plus attorneys' fees and costs in the amount of **$16,668.90**, for a total amount of **$38.507.50.**

It is **FURTHER ORDERED** that the clerk of the court mail a copy of this Order via regular and certified mail to defendant at the following address: William Fredrick, 1003 NE Clear Creek Dr., Grain Valley, MO 64029-9182.

**IT IS SO ORDERED.**

Date: November 12, 2013          **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri             Fernando J. Gaitan, Jr.
                                            Chief United States District Judge